UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

BYLIN HEATING SYSTEMS, INC., a California corporation, doing business as BYLIN ENGINEERED SYSTEMS; ROOF ICE MELT SYSTEMS INCORPORATED, an Oregon Corporation

Plaintiffs,

v.

M&M GUTTERS, LLC, a Utah Limited Liability Company; THERMAL TECHNOLOGIES, INC., a Utah Corporation; doing business as ROOF ICE MELT SYSTEMS, INC, and DOES 1 through 10, inclusive,

Defendants.

NO. CIV. 2:07-CV-0505-FCD-KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter comes before the court on defendants M&M Gutters, LLC, ("M&M Gutters") and Thermal Technologies, Inc.'s ("Thermal Technologies") (collectively, "defendants")[1] motion to dismiss plaintiffs Bylin Heating Systems, Inc., ("Bylin Heating")

---

[1] Defendants alternately refer to themselves in the singular and the plural. However, since both defendants are represented by the same counsel, the court interprets this motion as brought on behalf of both M&M Gutters, LLC, and Thermal Technologies, Inc.

and Roof Ice Melt Systems Inc.'s ("RIMS") (collectively, "plaintiffs"), sixth claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below,[2] defendants' motion is DENIED.

**BACKGROUND**[3]

Plaintiff RIMS is in the business of engineering and supplying winter freeze protection products for a variety of roofing structures. (Pl.s' Second Amended Compl., filed August 10, 2007 ("Compl."), ¶ 9). RIMS' products prevent or dissipate ice dams and icicles by targeting ice accumulation areas of roof structures. (Id.) RIMS is the assignee of United States Patent No. 5,391,858 (the "858 patent"), entitled "Ice Dam Melting System." (Id. ¶ 10).

In 1997, RIMS exclusively licensed the patent to plaintiff Bylin Heating pursuant to an Executive Purchase and Marketing Agreement (the "Agreement"). (Id. ¶ 11). In accordance with the Agreement, RIMS agreed to exclusively provide its RIM panel products to Bylin Heating. (Id.) Bylin Heating agreed to market and sell RIM panel products its capacity as the exclusive purchaser and marketer of RIM panel systems in North America. (Id.)

In 1999, RIMS and Bylin Heating executed an addendum to the Agreement, by which Bylin Heating exercised its option to begin manufacturing RIM panel products. (Id. ¶ 12). Plaintiffs'

---

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

[3] The facts of this case are taken from plaintiff's allegations in the second amended complaint.

products incorporate technology disclosed and claimed in the 858 patent. (Id. ¶ 14). In addition, plaintiffs' products are sold in conjunction with the trademarks "Roof Ice Melt Systems," "RIM" and "RIM Systems." (Id.) Bylin Heating is the exclusive owner of the these trademarks in combination with winter freeze protection, and icicle and icedam prevention solutions. (Id.)

From 1999 until 2003, defendant M&M Gutters was a purchaser and installer of Bylin Heating's Roof Ice Melt Systems products. (Id. ¶ 18). In 2003, M&M Gutters discontinued its relationship with Bylin Heating and began independently manufacturing and selling competitive heated roof products. (Id.) On May 28, 2004, plaintiffs' counsel informed Mike Gurr, former president of defendants M&M Gutters and Thermal Technologies, and current principal of defendant Roof Ice Melt Systems, that products offered by defendants infringed on plaintiffs' technology and trademarks. (Id. ¶ 19). Defendants disregarded this correspondence and all subsequent communications. (Id.)

Thereafter, defendant Thermal Technologies' former website, www.meltyourice.com, offered for sale heated roof panel products with names such as "Original RIM System," "Original RIM Products" and "Thermal Link Roof Ice Melt Systems." (Id. ¶ 22). Thermal Technologies' website linked to defendant M&M Gutters' website www.mandmgutters.com. M&M Gutters' website now links to the website of defendant Roof Ice Melt Systems, www.rooficemeltsystems.com, which offers for sale a variety of roof panel products that are identical or nearly identical to plaintiffs' products. (Id. ¶¶ 23-25).

Plaintiffs' complaint alleges defendants' actions have resulted in economic losses and a loss of goodwill associated with plaintiffs' marks and products. Specifically, plaintiffs bring claims for (1) patent infringement; (2) common law trademark and trade name infringement; (3) false designation of origin; (4) false advertising; (5) unfair competition; and (6) domain name infringement. Defendants move to dismiss plaintiffs' sixth cause of action for domain name infringement.

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to

relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

**ANALYSIS**

Plaintiffs allege defendants' domain name, www.rooficemeltsystems.com, is confusingly similar to plaintiffs' trademarks and trade name ("marks"). (Compl. ¶¶ 25, 57). Plaintiffs allege its marks are inherently distinctive and had acquired distinctiveness long before defendants' began using the domain name www.rooficemeltsystems.com. (Id. ¶ 57). As such, plaintiffs contend that defendants' domain name (1) diverts consumers from Bylin Heating's website; (2) usurps search engine results that would otherwise direct consumers to Bylin Heating's products; and (3) gains a commercial advantage by misleading consumers to perceive an affiliation or sponsorship between plaintiffs and defendants and their products. (Id.) Defendants assert that "Roof Ice Melt Systems" is generic within the meaning of 15 U.S.C. § 1125. (Mot. at 3.) Defendants contend that plaintiffs have not alleged facts that satisfy their burden to show "Roof Ice Melt Systems" is not generic. Therefore, defendant contends this issue may be resolved on a motion to dismiss.

As part of the Lanham Act, the Anticybersquatting Consumer Protection Act ("ACPA") provides that

> a person shall be liable in a civil action by the owner of a mark . . . if without regard to the goods or services of the parties, that person: (1) has a bad faith intent to profit from that mark . . .; (2) registers, traffics in, *or uses a domain name* that . . . *in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark*.

15 U.S.C. § 1125(d)(2)(I) (emphasis added). A "mark" is defined as "any trademark, service mark, collective mark, or certification mark." 15 U.S.C. § 1127.

In determining which marks are entitled to protection, marks are classified in categories of increasing distinctiveness (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992); see Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976). "In general, fanciful, arbitrary, and suggestive marks receive automatic protection because of their inherent distinctiveness." Interstellar Starship Servs., Ltd. v. Epix, Inc., 304 F.3d 936, 943 n.6 (9th Cir. 2002). While generic terms are not protected, a descriptive mark is entitled to protection "upon [a showing of] proof of distinctiveness acquired in commerce." Id.; see generally, TCPIP Holding Co., Inc. v. Harr Communications, Inc., 244 F.3d 88, 93 (2d Cir. 2001) (discussing the "requirements of distinctiveness").

A mark need not be registered to be protected. Two Pesos, Inc., 505 U.S. at 768 (stating Lanham Act "protects qualifying unregistered marks"); see Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 209 (2000). However, registration of a mark

"provides some indication the mark is descriptive rather than generic." Novak v. Overture Servs., 309 F. Supp. 2d 446, 458 (E.D.N.Y. 2004).

Whether a term is generic is a question of fact. Comm. for Idaho's High Desert v. Yost, 92 F.3d 814, 821 (9th Cir. 1996) ("genericness is a question of fact"); see also In re Northland Aluminum Products, Inc., 777 F.2d 1556 (Fed. Cir. 1985) ("Whether a term is a common descriptive name is a question of fact."). Determination of whether a mark is generic requires consideration of both quantitative and qualitative data, including the extent of advertising, the length of exclusive use, and public recognition, in order to determine whether the public domain defeats a mark outright or merely weakens it. See Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002).

Plaintiffs' complaint sets forth numerous facts sufficient to support its allegation they have acquired trademark rights in the mark "Roof Ice Melt Systems," which defendants allegedly use as their domain name. Plaintiffs allege that "Roof Ice Melt Systems Inc." has, since 1966, been continuously utilized as a trade name by plaintiffs within the meaning of California Bus. & Prof. Code § 14401, et seq. (Compl. ¶ 3(b)). Plaintiffs further allege Bylin Heating is the exclusive owner of the trademarks "Roof Ice Melt Systems," "RIM," and "RIM Systems" and that defendant Roof Ice Melt Systems has adopted Bylin Heating's trademark as both its company name and domain name, selling nearly identical products and thereby trading on the goodwill

associated with Bylin Heating's marks. (Id. ¶¶ 23-24).[4] As such, plaintiffs have sufficiently alleged that defendants' violated the ACPA by appropriating plaintiffs' mark as their domain name.

Morever, based upon the allegations in plaintiffs' complaint and because the issue of genericness is a question of fact, it is inappropriate for the court to rule on this issue at this stage in the litigation. The cases cited by defendants are distinguishable from the present case.[5] Defendants rely on Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788 (9th Cir. 1981) to support their position that a motion to dismiss is permissible where the facts alleged do not "permit a conclusion that consumers are likely to be confused." (Def.s' Reply to Opp'n to Mot. to Dismiss, filed Oct. 20, 2007 ("Reply"), at 5 (quoting Toho, 645 F.2d at 791)). In Toho, defendant used the term "bagzilla" as a marketing tool for its "monstrously strong"

---

[4] Defendants argue that the 858 patent is evidence that the mark "Roof Ice Melt Systems" is generic because these terms are merely descriptive of the function of the products. However, a descriptive mark is entitled to protection "upon [a showing of] proof of distinctiveness acquired in commerce." Interstellar Starship Servs., 304 F.3d at 943 n.6. As set forth above, plaintiffs allege that the mark has acquired such distinctiveness. Such allegations are sufficient to withstand a motion to dismiss.

[5] The majority of cases cited by defendants were adjudicated after consideration of evidence indicating the nature of a mark's use by the parties. Rudolph Intern., Inc. v. Realys, Inc., 482 F.3d 1195 (9th Cir. 2007) (motion for summary judgment); Yellow Cab Co. v. Yellow Cab/Elk Grove, 419 F.3d 925 (9th Cir. 2005) (motion for summary judgment); Japan Telecom, Inc. v. Japan Telecom A.M. Inc., 287 F.3d 866 (9th Cir. 2002) (motion for summary judgment); Committee v. Yost, 92 F.3d 814 (9th Cir. 1996) (bench trial); CES Publ'g Corp. v. St. Regis Publ'g, Inc., 531 F.2d 11 (2d. Cir. 1975) (preliminary injunction).

garbage bags. Toho, 645 F.2d at 791. The Ninth Circuit found it was implausible defendant's use would lead customers to believe plaintiff, owner of the trademark for the character "Godzilla," was the source or sponsor of the bags. Id. at 791. Conversely, in this case, plaintiffs' complaint alleges defendants are engineering and marketing a product nearly identical to plaintiffs' product and using an identical name, "Roof Ice Melt Systems," for their domain name and online sales. As such, the court's finding with respect to genericness in Toho is inapplicable.

Defendants' reliance on the Ninth Circuit's decision in Murray v. Cable National Broadcasting Co. is similarly misplaced. 86 F.3d 858 (9th Cir. 1996). In Murray, the court found that there was no likelihood of consumer confusion between the plaintiff's registered trademark "America Speaks" and the defendant's use of the term "America's Talking." Id. at 861. The court found that the plaintiff conducted "man-on-the-street" consumer surveys under his mark while the defendant offered talk-show television programming under the allegedly infringing name. Id. The court found because the parties did not share customers and because the services offered by the parties' were unrelated, there was no likelihood of confusion between the marks as a matter of law. Id. However, in this case, plaintiffs allege that plaintiffs and defendants target identical consumer classes through identical channels of trade. Further, the complaint alleges that the services and products marketed and sold by the parties are nearly identical. Thus, the court's findings in Murray are inapplicable to the facts of this case.

Giving plaintiffs every reasonable inference from the allegations in the complaint, plaintiffs have sufficiently alleged that the mark "Roof Ice Melt Systems," which is used as defendants' domain name, is not generic. Therefore, defendants' motion to dismiss is DENIED.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss plaintiffs' claim pursuant to Rule 12(b)(6) is DENIED.

IT IS SO ORDERED.

DATED: October 31, 2007.

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE