UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| BYLIN HEATING SYSTEMS, INC., a California corporation, doing business as BYLIN ENGINEERED SYSTEMS; ROOF ICE MELT SYSTEMS INCORPORATED, an Oregon Corporation,<br><br>      Plaintiffs,<br><br>  v.<br><br>M&M GUTTERS, LLC, a Utah Limited Liability Company; THERMAL TECHNOLOGIES, INC., a Utah Corporation; ROOF ICE MELT SYSTEMS, INC.; and DOES 1 through 10, INCLUSIVE,<br><br>      Defendants.<br><br>THERMAL TECHNOLOGIES, INC., a Utah corporation,<br><br>      Counterclaimant,<br><br>  v.<br><br>BYLIN HEATING SYSTEMS, INC., a California corporation, doing business as BYLIN ENGINEERED SYSTEMS; ROOF ICE MELT SYSTEMS INCORPORATED, an Oregon Corporation,<br><br>      Counterdefendants.<br><br>  v.<br><br>ROBERT BYLIN, an individual,<br><br>    Third-Party Defendant.<br>_____ | CASE NO. 2:07-CV-00505-FCD-KJM<br><br>MEMORANDUM AND ORDER |

This matter comes before the court on counterdefendants Bylin Heating Systems, Inc., Bylin Engineered Systems, Roof Ice Melt Systems, Inc.'s and third party defendant Robert Bylin's (collectively "Bylin") motion to dismiss counterclaimant Thermal Technologies, Inc.'s (hereinafter "Thermal Technologies") fourth and fifth counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  For the reasons set forth below,[2] Bylin's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Bylin is the exclusive licensee of United States Patent No. 5,391,858 (hereinafer "the 858 patent").  (Complaint, filed Mar. 14, 2007, ¶ 10).  The 858 patent is a snow and ice melting apparatus that incorporates a heat cell for placement on roof structures to prevent the formation of ice dams and icicles. (Id. ¶ 10).  Bylin filed a complaint against Thermal Technologies and M&M Gutters, alleging the defendants infringed the 858 patent. (Id. ¶ 16).  Bylin's Second Amended Complaint asserts claims for Patent Infringement, Trademark and Trade Name Infringement, False Designation of Origin, False Advertising, Unfair Competition and Federal Domain Name Infringement.  (Second Amended Complaint, filed Aug. 10, 2007, ¶¶ 27-60).  Thermal Technologies answered the complaint and counterclaimed against Bylin on November 15, 2007.

---

[1] All further references to a "Rule" are to the Federal Rules of Civil Procedure.

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

2

In its counterclaim, Thermal Technologies asserts that Robert Bylin contacted several of Thermal Technologies' distributors and/or purchasers (hereinafter "distributors") and informed them that Bylin had filed suit against Thermal Technologies for patent and trademark infringement. (Third Party Complaint, filed Nov. 15, 2007, ("Compl."), ¶ 94). Thermal Technologies alleges Bylin told the distributors that Bylin knew the lawsuit against Thermal Technologies had no merit, but that Bylin wanted to injure Thermal Technologies. (Compl. ¶ 95). Thermal Technologies further alleges that Bylin in bad faith threatened litigation against the distributors to unfairly compete against Thermal Technologies. (Id. ¶ 97).

Thermal Technologies alleges five counterclaims against Bylin: Invalidity of Patent, Non-infringement of Patent, Invalidity and Non-infringement of Trademark, Unfair Competition, and Intentional Interference with Prospective Economic Advantage. (Id. ¶¶ 99-121). Bylin seeks to dismiss Thermal Technologies' fourth and fifth counterclaims of unfair competition and intentional interference with prospective economic advantage. (Mot. to Dismiss, filed Dec. 21, 2007, ("Mot.") at 2). Bylin argues that the fourth and fifth counterclaims must be dismissed because the conduct alleged in support of those claims is absolutely privileged under California Civil Code § 47(b). (Mot. at 2).

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of

3

every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

/////
/////
/////

4

**ANALYSIS**

**A.  Choice of Law**

Counterclaims four and five arise under the common law of the states of Utah and California and under California Business and Professions Code §§ 17200 and 17500.  Thermal Technologies asserts that counterclaims four and five should be evaluated under federal common law and not, as Bylin contends, under California Civil Code § 47(b).  (Mot. at 4).

Federal Rule of Evidence 501 requires application of California Civil Code § 47(b).  Federal Rule of Evidence 501 provides: "In civil actions and proceedings, with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege of a . . . person . . . shall be determined in accordance with state law."  Fed. R. Evid. 501.  Federal law should not supercede that of the states in substantive areas such as privilege.  See Home Indem. Co. v. Lane Powell Moss & Miller, 43 F.3d 1322, 1328 (9th Cir. 1995) (finding that because state law supplied the rule of decision with respect to the claims, state privilege rules had to be applied).

Furthermore, when a state law cause of action "does not present an obstacle to the execution and accomplishment" of the federal patent laws, the state law cause of action survives.  See Dow Chemical Co. v. Exxon Corp., 139 F.3d 1470, 1475 (Fed. Cir. 1999).  Federal patent misuse laws do not preempt state law tortious interference claims when the underlying wrong involves bad faith marketplace conduct by the patentee.  See id.; see also Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999) (holding that state tort claims, including

5

tortious interference claims, based on publicizing a patent in the marketplace are not preempted by the patent laws if the claimant can show that the patent holder acted in bad faith in its publication of the patent).

Here, the fourth and fifth counterclaims arise out of state law and thus, state privilege law controls. There is no federal law that supercedes California's substantive litigation privilege law and therefore, state law must supply the rule of decision. In addition, Thermal Technologies alleges that Bylin acted in bad faith when it contacted distributors about Thermal Technologies' potential patent misuse. Because Thermal Technologies has adequately alleged bad faith, federal patent misuse laws do not preempt their state law tortious interference and unfair competition claims. Thus, California privilege law will supply the rule of law in regards to the claims brought under California law.[3]

**B.  Application of California Civil Code § 47(b)**

Thermal Technologies alleges that its claims are based on Bylin's pattern and practice of anti-competitive behavior in the market. (Opposition to Mot., filed Feb. 7, 2008, ("Opp.") at 9). Thermal Technologies asserts that Bylin's anti-competitive behavior is noncommunicative conduct and therefore, California Civil Code § 47(b) is inapplicable. Bylin contends the basis for

---

[3] California Civil Code § 47(b) does not apply to Utah common law. California Civil Code § 47(b) is only applicable to the extent the fourth and fifth counterclaims arise under California common law and California Business and Professions Code §§ 17200 and 17500. Bylin has not proffered any grounds to dismiss these claims to the extent they arise under Utah common law.

6

counterclaims 4 and 5 are communicative in nature because the allegations center upon the letters Bylin sent to distributors, which they assert are protected by the litigation privilege. (Reply, filed Feb. 14, 2008, ("Reply") at 7-8). Because Thermal Technologies' complaint does not clearly distinguish whether the counterclaims are based solely on the statements made by Bylin or whether the claims arise out of the broader pattern and practice of anti-competitive behavior, the court must analyze each in turn.

       **1.    Communicative Acts**

Bylin asserts that the fourth and fifth counterclaims arise out of communications between Bylin and Thermal Technologies' distributors that were made in connection to this lawsuit. Bylin contends the communications were intended to disclose the impending lawsuit and to inform the distributors they would be potentially responsible parties in the action. (Mot. at 7-8). Bylin argues that regardless of whether the communications were made before or after the complaint was filed, California Civil Code § 47(b) defeats counterclaims four and five because the communications are significantly related to the litigation and therefore, encompassed by the litigation privilege. (Reply at 5).

California Civil Code § 47(b) provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged. The privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical

7

relation to the action." Silberg v. Anderson, 50 Cal. 3d 205, 212 (Cal. 1990). California's litigation privilege encompasses not only statements made in pleadings or testimony, but also prelitigation communications, statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit. Hagberg v. California Federal Bank, 32 Cal. 4th 350, 361 (Cal. 2004).

To be protected by the litigation privilege, a communication must be "in furtherance of the objects of the litigation." Silberg, 50 Cal. 3d at 219. This requires that the communication be "connected with, or have some logical relation to" the action and that "it not be extraneous to the action." Id. at 219-220.

The litigation privilege unequivocally applies to communications to third parties with a substantial interest in the outcome of *pending* litigation. See Sharper Image Corp. v. Target Corp., 425 F. Supp. 2d 1056, 1077-78 (N.D. Cal. 2006). In Sharper Image, the plaintiff sued the defendant for patent and trademark infringement. The defendant filed a counterclaim based on e-mails the plaintiff sent to third parties, who purchased the allegedly infringing product from the defendant, informing them of the lawsuit and asking them not to carry the defendant's product. Id. The court held that the litigation privilege barred the defendant's counterclaim for tortious interference with economic advantage. Id. at 1079. The Sharper Image court explained that where a third party purchases a product that is the subject of an infringement action, a communication to that party informing it of a pending action has a logical relation to the action because the third party clearly has an interest in the

8

litigation. Id. Thus, the court held that any communication made *after* the lawsuit was initiated is privileged under California Civil Code § 47(b).

When litigation is not yet underway, statements may still be privileged pursuant to § 47(b) if they relate to litigation that "is contemplated in good faith and under serious consideration." Action Apartment Assn., Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1251 (2007). However, the court will not extend "a privilege to persons who attempt to profit from hollow threats of litigation." See Action, 41 Cal. 4th at 1251; see also Fuhrman v. Cal. Satellite Sys., 179 Cal. App. 3d 408, 422 n.5 (1986) (disapproved of on other grounds by Silberg, 50 Cal. 3d at 219). Moreover, whether communications are made in good faith and actual contemplation of litigation often require factual determinations. See Visto Corp. v. Sproqit Techs., Inc., 360 F. Supp. 2d 1064, 1070 (N.D. Cal. 2005) (finding there were factual questions as to whether prelitigation demand letters fell under the litigation privilege); see also Reid-Ashman Mfg. v. Swanson SemiConductor Serv., L.L.C., No. 06-6693, 2007 U.S. Dist. LEXIS 37665, at *35 (N.D. Cal. May 10, 2007) (holding that fact questions remain as to prelitigation statements).

In this case, the statements at issue were allegedly made to distributors by Bylin, warning distributors that Bylin had a lawsuit against Thermal Technologies and threatening to bring the distributors into the lawsuit. (Compl. ¶¶ 89-98). Some of the communications that allegedly form the basis of the state law claims were made on March 3, 2007, just before Bylin filed its complaint against Thermal Technologies. (Id. ¶¶ 89-92). Other

9

statements were allegedly made after the filing of the lawsuit. (Id. ¶ 94).

Bylin's communications to distributors after the complaint was filed on March 14, 2007 have a sufficient "connection or logical relation" to the action to fall under the privilege set forth in § 47(b). Thermal Technologies' distributors are third parties that clearly have an interest in the litigation. Distributors' supply of the product may be interrupted if the action is successful, and the distributors may themselves face legal liability if the product is found to infringe. See Sharper Image, 425 F. Supp. 2d at 1079; see also Reid-Ashman, 2007 U.S. Dist. LEXIS 37665, at *35. Because the distributors possess a substantial interest in the outcome of the litigation, Bylin's communications with the distributors *after* the initiation of the lawsuit are privileged, and Thermal Technologies cannot allege state tort claims based solely on these communications.

There remains a factual question, however, as to whether Bylin was seriously and in good faith contemplating litigation when it made the statements *prior* to the initiation of the action.[4] Thermal Technologies alleges that Bylin has a history of asserting bad faith threats of infringement litigation against its competitors in order to intentionally monopolize the industry

---

[4] The subsequent suit that ensued shortly after the prelitigation communications is certainly a factor. See Visto, 360 F. Supp. 2d at 1070; cf. Laffer v. Levinson, Miller, Jacobs & Phillips, 34 Cal. App. 4th 117, 124 (Cal. Ct. App. 1995) (one factor supporting inference of a lack of good faith is subsequent failure to file suit). However, the subsequent suit is one factor among many to consider in the good faith and serious contemplation analysis. The litigation privilege does not apply as a matter of law merely because a subsequent suit is filed.

and to lessen competition in the relevant market.  (Compl. ¶¶ 67, 113, 118-20).  Thermal Technologies further asserts that Bylin acted in bad faith when Bylin informed distributors its case had no merit, but that Bylin wanted to injure Thermal Technologies. (Id. ¶¶ 88-95).  Assuming Thermal Technologies' allegations are true, Bylin's prelitigation communications to distributors have no "connection or logical relation" to the action.  Deliberate misrepresentations intended to harm Thermal Technologies are not communications made "in furtherance of the objects of litigation," nor are they made "in good faith and under serious consideration."  Silberg, 50 Cal. 3d at 219; Action, 41 Cal. 4th at 1251.  Whether Bylin's prelitigation communications with distributors were "hollow threats" made solely to harm Thermal Technologies and to unfairly compete against Thermal Technologies are questions of fact.  Therefore, factual findings are necessary to determine whether (1) Bylin made any threats of litigation against Thermal Technologies' distributors and (2) whether those threats of litigation were made in good faith and under serious consideration.

Therefore, to the extent that the fourth and fifth claims are based solely on the communications between Bylin and Thermal Technologies' distributions, Bylin's motion to dismiss is GRANTED with respect to claims arising out of the statements made after the complaint was filed and DENIED with respect to claims arising out of the statement made prior to the initiation of the lawsuit.

   **2.   Non-communicative Acts**

Thermal Technologies asserts that Bylin's communications with distributors are not simply communications, but rather are

11

evidence of Bylin's misconduct in unlawfully procuring patent rights and attempting to create a monopoly, both of which are noncommunicative conduct. (Opp. at 9). Thermal Technologies alleges that Bylin's bad faith threats of litigation are part of a broader pattern and practice of tortious and anti-competitive conduct. (Id.)

California Civil Code § 47(b) applies only to communicative acts, not non-communicative conduct. Jacob B. v. County of Shasta, 40 Cal. 4th 948, 957 (Cal. 2007). The threshold question in determining whether the litigation privilege applies is "whether the defendant's conduct was communicative or non-communicative." Id. If the gravamen of the action is an "independent, non-communicative, wrongful act," then California Civil Code § 47(b) does not apply. Id. For example, an attorney's act of counseling his or her client is covered, even if it is alleged that the attorney made misrepresentations during the course of such communications. Rubin v. Green, 4 Cal. 4th 1187, 1195-1196 (Cal. 1993). However, pure conduct, such as eavesdropping is not covered. Id. The key is to determine whether the injury alleged resulted from an act that was communicative in nature, and thus whether the litigation privilege applies. See Rusheen v. Cohen, 37 Cal. 4th 1048, 1058 (Cal. 2007); see also Rubin, 4 Cal. 4th at 1196.

Whether the statements were made before or after the lawsuit was filed does not affect the analysis of whether the gravamen of the claims were communicative or non-communicative in nature. As set forth above, the claims are dismissed to the extent they arise out of statements made after the filing of the complaint.

However, to the extent that Bylin's communications with distributors are evidence of an overall pattern and practice of unlawfully procuring patent rights and creating a monopoly, the litigation privilege does not apply.  Unlawfully procuring patent rights and attempting to create a monopoly are non-communicative in nature.  Such anti-competitive conduct is not privileged under California Civil Code § 47(b).  See <u>Meridian Project Sys. v. Hardin Constr. Co.</u>, 404 F. Supp. 2d 1214, 1223 (E.D. Cal. 2005).  Therefore, to the extent the fourth and fifth counterclaims are based upon a pattern and practice of tortious and anti-competitive conduct, merely evidenced in part by the communications asserted in the complaint, Bylin's motion to dismiss is DENIED.

**CONCLUSION**

For the foregoing reasons, Bylin's motion to dismiss Thermal Technologies' counterclaims arising under California law is GRANTED in part and DENIED in part.  The motion to dismiss is GRANTED to the extent the counterclaims are based solely upon statements made *after* Bylin filed the complaint in this action.  The motion is DENIED to the extent the claims are based upon statements made *before* the complaint was filed and to the extent such counterclaims are based upon on the alleged pattern and practice of anti-competitive behavior in the market.

IT IS SO ORDERED.

DATED: March 18, 2008

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE